# UNITED STATES DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

---

**MC SV I, LLC.,**
**19455 Deerfield Avenue**
**Suite 307**
**Lansdowne, Virginia 20176**

                                          **Plaintiff,**

          **v.**

**Social Tables, Inc.,**                        Case No. 19-2771
**1325 G St N.W.,**
**Washington, D.C. 20005**

                                          **Defendant,**

**Cvent Atlanta, LLC.,**
**3340 Peachtree Rd, N.E.**
**Suite 2800**
**Atlanta, Georgia  30326**

**-and-**

**Continental Stock Transfer & Trust, Company,**
**1 State Street 30th Floor**
**New York, NY 10004**

                          **Nominal Defendants.**

---

Plaintiff MC SC I, by and through its  attorney Thomas V. Sjoblom,  for its Complaint

against Social Tables, Inc., and the nominal defendants alleges as follows:

## NATURE OF ACTION

1.      Plaintiff MCV SV I brings this suit for breach of contract  and breach of duty of good

faith and fair dealing to obtain damages from Defendant Social Tables, Inc. ("Social Tables"),

for its  failure in July 2018 to  deliver shares underlying an exercise stock purchase warrant held

by Plaintiff to obtain shares of Social Tables.   In the alternative, Plaintiff MC SV I seeks specific performance for the issuance and delivery of shares either of Social Tables or  Cvent to fulfill the timely exercise of Plaintiff's  warrant.

2.      Defendant  Social Tables, in  breach of its contract to provide the exercise shares underlying the stock purchase warrant and in breach of its duty of good faith and fair dealing, frustrated and delayed Plaintiff's  lawful and timely exercise of its warrant by debating and providing multiple arbitrary prices for its shares purportedly representative of the fair market value of Social Tables stock needed to determine how many shares Plaintiff would be entitled to under the warrant, by lulling Plaintiff into the belief that Plaintiff was first required to sign a confidentiality agreement before it could obtain any information from Social Tables about its various share price valuations, by stalling so it could negotiate an acquisition of Social Tables by Cvent Atlanta, LLC ("Cvent") , and then by denying Plaintiff its right to a warrant cancellation agreement under which it would receive merger consideration promised. Accordingly, Plaintiff was denied the economic benefit of the shares underlying the warrant.

3.      Given the acquisition of Social Tables by Cvent in October 2018, shares of Social Tables, which were declared unique to that company in the plan of merger with Cvent,  are not publicly available.

4.      Plaintiff seeks compensatory damages in excess of Five Hundred Thousand Dollars ($500,000.00)  for defendant's breach of contract.

5.      Plaintiff also seeks costs, expenses and attorneys fees to which it is entitled under the Stock Purchase  and Warrant Purchase Agreement.

## PARTIES

6.     **PLAINTIFF  MC SV I**.  MC SV I, LLC, a manager -managed Virginia limited liability company ("MC SV I, LLC" or the "Company"), is the holder of the warrant for the purchase shares of series seed convertible preferred stock of Social Tables.   The sole manager of MC SV I is MC Advisory  Services, LLC, which  is  wholly-owned by  Militello Capital ("MC"), for which William Militello serves as CEO and  who signed the notice of exercise of the warrant. For purpose of diversity under 28 U.S.C. § 1332(a)(2), MC SV I is a citizen of the Commonwealth of Virginia.

7.     **DEFENDANT  SOCIAL TABLES, INC.**  Social Tables, Inc., ("Social Tables" ), organized under the laws of Delaware but  with its principal place of business  in Washington, DC, is a global cloud-based based meeting and event management company.  It was  founded in 2011 by Dan Berger and Matthew Tendler.   According to an Agreement and Plan of Merger among Social Tables, Linebacker Merger Sub, and Cvent Atlanta (below), as of October 16, 2018  and pursuant to a "reverse triangular merger" transaction Social Tables became a wholly owned subsidiary of Cvent.  For purpose of diversity under 28 U.S.C. § 1332(a)(2), Social Tables is a citizen of both Delaware and the District of Columbia where its high-level officers direct, control and coordinate the company's business affairs.  Dan Berger, CEO of Social Tables, still manages the day-to-day affairs of Social Tables.

8.     **NOMINAL DEFENDANT CVENT ATLANTA.**  Cvent Atlanta, LLC  ("Cvent"), organized under the laws of  Delaware as a limited liability company, is a meetings, events, and hospitality technology provider. As of October 16, 2018,Cvent became the parent corporation of Social Tables.   For diversity purposes, the citizenship of a nominal defendant is disregarded.

9.     **NOMINAL DEFENDANT  CONTINENTAL STOCK TRANSFER & TRUST COMPANY**. Continental Stock Transfer & Trust Company, Inc.,  ("CST"), organized under the

laws of New York and located in New York City, served as the paying agent under the Plan of

Merger between Social Tables and Cvent responsible for distributing merger consideration (i.e.,

cash)  to Social Tables stockholders who tendered their shares of Social Tables to Cvent in

connection with the Merger.   For diversity purposes, the citizenship of a nominal defendant

Cvent Atlanta is disregarded.

## JURISDICTION  AND VENUE

10.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a)(2)

because this action is brought by a citizen of a foreign state against citizens of the District of

Columbia, and the matter in controversy exceeds $75,000 exclusive of costs and interest.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2),(3) and (c)(2) because

a substantial part of the  events or omissions giving rise to this action occurred in the District of

Columbia, including negotiations of the transaction documents pursuant to which the Plaintiff

purchased the Warrant, and  the notice of  exercise Warrant  required  it to be delivered to the

Social Tables' offices in the District of Columbia.  The Defendant also is subject to personal

jurisdiction in the District of Columbia.

## FACTUAL ALLEGATIONS

### Militello Capital And MC SV I as Lead Investor for Series Seed Financing Round

12.     During the summer 2013, Militello Capital ("MC") acted as the lead investor in the series

seed round of financing for Social Tables.  Militello Capital committed funding by MC SV I and

Militello Venture Partners II ("MVP II).  As lead investor,  MC indicated its financial support for

Social Tables, set the valuation and terms for the financing round, and contributed time and

expertise to ensure that the round was closed successfully.  As lead investor, MC also provided

institutional validation to the Social Tables business model by being the first investor to commit

to the financing.   As  "lead," MC was the first entity to commit initial  funding to provide the

"seed capital" to finance Social Tables.  No other investors were solicited to commit capital until

after Militello Capital as lead investor set the price and committed to the price. As the lead

investor,  MC SV I, LLC's investment, together with the investment of its affiliate Militello

Venture Partners II, LP ("MVP II"), were more than double the investment of any other

purchaser and accordingly were instrumental in the consummation of that financing round.

13.      MC's  role as "lead"  in the financing ensured the success of Social Table's first equity

financing round to capitalize the company.[1]  Mr. Dan Berger, CEO of Social Tables CEO,

expressed his appreciation in a hand-written note to Plaintiff:

> "Dear Matt & Bill, Thank you for your investment in Social Tables, I appreciate your
> support and I look forward to the bright future ahead."

14.      On July 26, 2013, Mr. Berger also sent a letter to the series seed investors, stating how

critical such investments were to the growth and future of the company:

>  "Thank you very much for your investment in Social Tables. Whether you're a new
> investor or previous investor, your trust, support and capital is very much appreciated and
> will play a critical role in the growth of the company going forward. I, along with my
> Management Team and every single one of our teammates, will do anything and
> everything to maximize the value of your shares."

**Series Seed Convertible Preferred Stock and Warrant Purchase Agreement**

15.      On or about July 26, 2013,  Social Tables successfully closed its series seed financing

round.  On that date,  Plaintiff MC SV I subscribed as purchaser through Millennium Trust Co.,

Ltd.,  custodian for the benefit of MCSV I,  and MC SV I invested $350,000.  As a result,

Defendant Social Tables executed and issued to Plaintiff a combined document called Series

---

[1] Social Tables was initially capitalized in an "Angel" debt financing round through the sale of
convertible promissory notes in which MVP II also participated.

Seed Convertible Preferred Stock and Warrant Purchase Agreement ("SPA/Warrant

Agreement"),  by which Plaintiff obtained, pursuant to that agreement, both (a)  538,462 shares

of series seed convertible preferred stock, and (b) Warrant No. Seed- 1 to purchase an additional

384,615 shares of series seed convertible preferred stock under the warrant. [Exhibit A.]

16.     Section 2.2 of the SPA/Warrant Agreement provided that Defendant Social Tables was

supposed to deliver both a certificate for the number of shares purchased, but also the Warrant

registered in the name of MC.

17.     Section 1.2 (b) provided that, at closing, Defendant Social Tables agreed to issue and sell:

> **"(b)** to Militello, severally and not jointly, and Militello agrees to purchase from the
> Company, severally and not jointly, a warrant to purchase that number of shares of the
> Company's Series Seed Convertible Preferred Stock (the "***Warrant Shares***" and
> collectively with the Purchased Shares, the "***Shares***") equal to one share for every five
> Purchased Shares purchased by such Warrant Purchaser at the Closing pursuant to
> Section 1.2(a) above, at an exercise price per share equal to the $1.00, in substantially the
> form attached hereto as *Exhibit C* (each a "***Warrant***" and collectively, the "***Warrants***")."

18.     The accompanying Stock Purchase Warrant provided in the second paragraph of its face

page that:

> **"THIS CERTIFIES THAT**, for value received, MC SV I, LLC (the "***Investor***"), with
> its principal office located under such party's name on Exhibit A to the Purchase
> Agreement (as defined below) or its permitted assigns (as applicable, the "***Holder***"), is
> entitled to subscribe for and purchase from **SOCIAL TABLES, INC.**, a Delaware
> corporation (the "***Company***"), with its principal office as set forth under the Company's
> signature to the Purchase Agreement, the Exercise Shares (as defined below) at the
> Exercise Price (as defined below).
>
> This Warrant to Purchase Series Seed Convertible Preferred Stock (this "***Warrant***") is
> issued pursuant to the terms of that certain Series Seed Convertible Preferred Stock and
> Warrant Purchase Agreement, dated as of the date hereof, by and among the Company,
> the Investor and certain other parties thereto (the "***Purchase Agreement***").

19.     Section 2 of the Warrant provided that the holder of the Warrant, MC SV I,   could exercise

the Warrant and purchase Exercise Shares "at any time during the Exercise Period, by delivery of

the following to the Company at its address set forth above (or at such other address as it may

designate by notice in writing to the Holder):

(a)     An executed Notice of Exercise in the form attached hereto;

(b)     Payment of the Exercise Price either (i) in cash or by check, or (ii) by wire
transfer of immediately available funds; and

(c)     This Warrant."

[Exhibit A.]

20.     The exercise period  under the Warrant commenced on July 26, 2013 and terminated  five

(5) years later on July 26, 2018.

21.     Section 1 (c) of the Warrant stated that the exercise price was $1 per share.  However, as

an alternative to paying the exercise price in cash,  the Warrant afforded MC  SV I  the

opportunity to exercise the Warrant by means of a "net exercise," also known as a "cashless

exercise."   A "net exercise" or "cashless exercise" is a customary provision in a warrant that

allows the holder to pay all or portion of the exercise price by crediting or "netting" the value of

the warrant share above its cash exercise price. This cashless exercise provision thus allows the

warrant holder to  avoid the need to pay the exercise price in cash (although fewer shares are

received because some are used to pay the exercise price), based on an increase in the value of

the underlying warrant shares above the cash exercise price.

22.     A "net exercise" or "cashless exercise" was permitted  by Section 2.1 of the Warrant,

which stated that "[n] otwithstanding any provisions herein to the contrary, if the fair market

value of one Exercise Share is greater than the Exercise Price (at the date of calculation as set

forth below), in lieu of exercising this Warrant by payment of cash, the Holder may elect to

receive shares equal to the value (as determined below) of this Warrant ( or the portion thereof

being canceled) by surrender of this Warrant at the principal office of the Company together with

the properly endorsed Notice of Exercise in which event the Company shall issue to the Holder a number of Exercise Shares computed using the following formula:"

$$X = \frac{Y\,(A\text{-}B)}{A}$$

Where  $X$ = the number of Exercise Shares to be issued to the Holder

> $Y$ =  the number of Exercise Shares purchasable under the Warrant or, if only a portion of the Warrant is being exercised, the portion of the Warrant being canceled (at the date of such calculation)

> $A$ = the fair market value of one Exercise Share (at the date of such calculation)

> $B$ = Exercise Price (as adjusted to the date of such calculation).

23.     Pursuant to Section 2.1 of the Warrant, the "*the fair market value of one Exercise Share",* or "A" in the Net Exercise formula above, was to be determined by the Board of Directors of Social Tables in "good faith."

24.     As a further condition to the exercise of the Warrant, Section 3 of the Notice of Exercise required the Plaintiff to make certain investment representations to Social Tables, which Defendant  Social Tables frustrated and blocked by refusing to turn over the corporate information needed by Plaintiff when evaluating pricing of its cashless exercise and when submitting its notice of exercise:

> "(3) The undersigned represents that … (ii) the undersigned is aware of the Company's business affairs and financial condition and has acquired sufficient information about the Company to reach an informed and knowledgeable decision regarding its investment in the Company;…"

25.     Defendants frustrated Plaintiff's ability to obtain the financial information Plaintiff sought prior to and after submitting its notice of exercise,  first by requiring Plaintiff to sign a

confidentiality  agreement and then by delaying timely delivery of appropriate documentation

until more than two (2) months after Plaintiff's timely exercise.

**Defendants Act In Bad Faith**

26.     In anticipation of exercising Warrant No.1, on or about June 4, 2018  Mr. Militello  sent

an email to Social Table's CEO Dan Berger inquiring about the exercise process and specifically

requesting that Social Tables "send us the documents we need to sign up to exercise them.

27.     In response, MyLe Chang,  Social Table's Vice President of Finance,  asked  Mr.

Militello whether he  planned to pay the exercise price of $1 per share or "use the net exercise

method to exercise without paying any cash? If the latter, we will need the *board*  to determine

the fair market value of a share of Series Seed stock in order for you to exercise." (Emphasis

added).  Mr. Militello responded  that he intended to use the cashless exercise provision in the

Warrant, with the number of shares to be "driven by the FMV of the series seed preferred

shares." Within minutes, Mr. Militello responded that he believed there was a cashless exercise

provision in the Warrant and that his "desire is to exercise a large amount of the warrants into

preferred shares but without having to pay any cash. The exact number I decide on will likely be

driven by the FMV of the series seed preferred shares. I'll return the form tomorrow."  Moments

later Mr. Chang replied that "[t]here is a cashless exercise option and we would need our Board

to determine the FMV. Let us provide you the FMV first then you can return the form. Thanks

will keep you posted."

28.     On June 7, 2018,  MyLee Chang further replied to Mr. Militello that Social Tables

planned to use Social Tables' most recent valuation prepared under Section 409A of the Internal

Revenue Code ("IRC"), 26 U.S.C. §409A ("409A Valuation"), as a means of determining the

fair market value of the exercise shares and indicated that this would be approximately $0.91 per

share based on Social Table's then most recent October 2017 409A Valuation, which, like

previous 409A Valuations, was sent to Plaintiff without the need for any non-disclosure

agreement. [2]   MyLe Chang added that Social Tables planned to update its 409A Valuation as of

June 30, 2018, but could not convey that information to Mr. Militello until mid-July 2018, which

would give Mr. Militello only a very short window to exercise by July 26, 2018 expiration date.

Mr. Chang concluded that "[y]ou can opt to do a cash exercise now or wait until mid-July to

exercise based on the outcome of the new 409a report. We will keep you posted."

29.     According to the IRS regulations, an independent valuation conducted under section

409Aof the IRC  is not presumed reasonable for purposes of determining the fair market value of

equity securities where the company whose securities are being valued may "reasonably

anticipate, as of the time the valuation is applied, that the [company] will undergo a change in

control event…." 26 CFR 1.409A-1 (b)(5)(iv)(B)(iii).

30.     On or about  July 9, 2018, Mr. Militello, as  CEO of MC and authorized representative of

the sole manager of MC Advisory  Services,  submitted on behalf of MC SV I, a timely notice  of

cashless exercise  for all 384,615 shares of series seed convertible preferred shares. Pursuant to

Section 2.1 of the Warrant and the formula set forth therein (and in paragraph 22 above),

Plaintiff elected, as it was previously apprised by Social Tables it was permitted to do (as alleged

in paragraph 27 above),  to exercise the Warrant on a net exercise basis and ascribed a value of

$1.77 per share for each Exercise Share.  Accordingly, pursuant to that formula, Plaintiff

---

[2] Derived from a § 409A of the IRC, a 409A Valuation is intended to be an independent
valuation of a company's equity securities to provide a safe harbor against harsh penalties
(generally a 20% excise tax) imposed on individuals receiving equity based deferred
compensation when the issuer undervalues its stock or other equity securities issued to
employees and independent contractors under deferred compensation plans.  A lower valuation
also reduces the issuer's accounting expense for compensation to employees and consultants,
which in turn increases the issuer's net income and increases the potential for greater long-term
capital gains to those receiving deferred equity-based compensation.  Because of the inherent
conflicts of interest inherent in such valuations, they are highly controversial.

requested the delivery of 167,318 shares of series seed shares.  (($1.77-$1.00)/$1.77)) x 384,615

= 167,318 shares.  [Exhibit B.]

31.      On or about  July 12, 2018, Mr. Dan Berger sent an email to Mr. Militello stating:

> Thank you for your exercise request. To avoid any potential dispute, the Board
> engaged an outside firm to do the valuation of the Series Seed as of 6/30/18. They
> determined the FMV to be $1.02, which the Board has accepted as the correct value.
> You are welcome to do the cashless exercise since the FMV is above $1.00. You will
> receive 7,692 shares ($1.02 FMV - $1.00 strike price = $0.02 or 2% * [x] 384,615
> warrants = 7,692 shares).  Alternatively, you may still exercise your warrant at $1.00
> per share to receive all of the shares.
>
> Please let me know if you have any additional questions.

32.      The June 30, 2018 409A Valuation  -  which was prepared by Timan, an independent

third party valuation  firm, and on which Social Tables relied for purposes of setting the $1.02

price for the Exercise Shares – was predicated on and stated that  "[m]anagement's estimate for a

reasonable expected time frame for … the potential for an acquisition [and] a liquidity event is

**7.2 years** from the Valuation Date…."  Thus, the board of Social Tables never apprised Timan

that Social Tables had already engaged Mooreland to seek out a strategic partner, even though

the report stated that "no necessary or relevant information has been knowingly withheld."

33.      Concerned about the dubious valuation ascribed to the exercise shares by Social Tables'

board of directors, Mr. Militello, on behalf of MC SV I, sent a letter to Social Tables on July 23,

2018  requesting, pursuant to Section 220 of the Delaware General Corporation Law (the "DGL

220 Statutory Request"), information necessary to enable MC to make an informed investment

decision related to the Warrant exercise and the valuation for the exercise shares made by Social

Tables' board of directors.

34.      In addition, on or about July 23, 2018,  as required by the terms of the Warrant,  Mr.

Militello, on behalf of MC SV I, sent to Social Tables via FedEx a copy of the Warrant, which it

had received electronically from Social Tables five (5) years earlier on or about August 7, 2013,

together with the Notice of Exercise reflecting the $1.77 value ascribed by MC to the exercise shares.

35.     On July 30, 2018, Social Tables responded to MC's July 23, 2018 letter by indicating that it "generally" intended to comply with the DGL 220  Statutory Request but conditioned its compliance upon the execution by MC of a confidentiality agreement.

36.     Because of the wide disparity in the valuation of the fair market value and number of exercise shares, on or about  August 6, 2018 and again on August 8, 2018 undersigned counsel spoke with  Mr. Steven Kaplan,  counsel for Social Tables. Mr. Kaplan acknowledged that Social Tables had received the notice of exercise  but  rejected MC's valuation for $1.77 per share. When challenged over the 409A Valuation, despite the statements of MyLe Chang, as alleged in paragraphs  27 and 28 above, Mr. Kaplan stated that Social Tables had not used  a 409A Valuation  and had not used a common stock method but instead used a third-party independent valuation firm, although no such third-party valuation report was 0provided to Plaintiff. Undersigned counsel requested that the exercise period for the Warrant be extended for a reasonable time until Plaintiff obtained the necessary information from Social Tables to make an informed investment decision.  Counsel for Social Tables stated, however, that the "preponderance" of board of directors would  not negotiate any extension of the Warrant. Undersigned counsel then stated that MC demanded that a stockholders meeting be noticed to occur on or before September 15, 2018, to which counsel for Social Tables agreed, but stated that he doubted there would be "any sympathetic stockholders."  Despite its obligation to do so, Social Tables never sent out the requisite notice for the stockholders' meeting.

37.     In a later email dated August 17, 2018, Mr. Steven Kaplan, counsel to Social Tables, represented that the information underlying the DGL  220 Statutory Request would be forthcoming during the week of August 20, 2018.   Instead, on August 31, 2018,   counsel to

Social Tables retransmitted the Confidentiality Agreement that MC needed to execute in order to receive the documents underlying the 220 Statutory Request, which MC executed the Agreement and returned that same day.

38.     Plaintiff received only some of the documents required by DGL 220 from Social Tables on September 13, 2018.   In that production was the long awaited  June 30, 2018  409A Valuation prepared by Timan LLC, the same firm that prepared the prior years' reports. Accordingly, the June 30, 2018 409A Valuation report was not produced until well after the date on which an informed investment decision by Plaintiff  had to be made.

### Cvent's Acquisition of Social Tables Revealed

39.     The November 2017 minutes of the board of directors of Social Tables reveal that Social Tables had engaged in Mooreland Partners, a leading independent investment bank that provides M&A and private capital advisory services in the technology industry.  The January 25, 2018 board minutes of Social Tables also state that the board of directors received an update from Mooreland Partners regarding "opportunities for potential  strategic transactions." Further, according to the April 19, 2018 minutes of the board of directors of Social Tables,  Mr. Berger discussed "feedback" from Mooreland Partners   about "the potential for a strategic transaction and capital raises with an emphasis on an approach that would maximize the value of the common stock."

40.     On October 16, 2018,  Mr. Berger contacted Mr. Militello and informed him for the first time  that Social Tables had been acquired by Cvent  in an all cash transaction that valued the exercise shares for an appreciably higher dollar amount – **$2.52 per share** – which was well above the earlier claimed fair market value of 0.91 cent under the  §409A Valuation (paragraph 28 above), above the allegedly independent $1.02 June 30, 2018 409A Valuation (paragraph  31

above) and even exceeded the valuation of $1.77 ascribed by MC in its notice of exercise (paragraph 34 above).

41.     Remarkably, **on the same day**, October 16, 2018, Social Tables announced that it both closed the merger and had obtained the necessary votes to close the merger. Equally remarkable is the fact that Social Tables quietly and quickly accomplished this merger without informing or seeking the vote of Plaintiff, which held almost four percent (4%) of Social Tables' equity.

42.     In an October 17, 2018 press release, Mooreland Partners announced that it had "acted as the exclusive financial advisor to Social Tables on its sale to Cvent, a market leader in meetings, events, and hospitality technology," and that Mooreland had executed on "a landmark transaction in the consolidating hospitality software space, where both the supply and demand sides are seeking broader and more automated solutions."

43.     Perplexed by this recent revelation, on October 18, 2018 undersigned counsel sent a letter to Mr. Kaplan, again requesting the issuance of the shares at the $1.77 valuation and expressing MC's frustration with the "double talk" by Social Tables and its counsel, which "can only be interpreted as intent to defraud MC SV I"  – and "possibly the IRS through its specious 409A valuation"  – during the preceding two months to deprive MC of the exercise shares. [Exhibit C.]

44.     On October 23, 2018, Mr. Alex Ferrara of Bessemer Trust sent an email to Mr. Militello advising that Mr. Ferrara served on the board of Social Tables prior to the acquisition Social Tables by Cvent. In a follow up teleconference on October 25, 2018 between Mr. Militello and Mr. Alex Ferrara, Mr. Ferrara indicated that Social Tables received a letter of intent from Cvent – more than two months earlier on **August 13, 2018** – offering to acquire Social Tables. Later that same day, October 25, 2018, Plaintiff received documents from Social Tables both notifying MC SV I and MVP II that the acquisition of Social Tables by Cvent had closed earlier

and was effective October 16, 2018, with the price per share paid by Cvent for the exercise shares of **$2.52** per share.

45.     Pursuant to Section 4(a)(ii) of the Agreement and Plan of Merger with Cvent, Social Tables represented that the "attached Schedule 4(a)(ii) accurately sets forth the authorized and outstanding equity and the name and number of equity securities each Equity holder thereof." [3] Social Tables further represented that, except for any warrants set forth in Schedule 4(a)(ii) to the Cvent merger agreement, "there are **no outstanding** or authorized options, **warrants,** rights, contracts, pledges, calls rights to subscribe, conversion rights, or other agreements or commitments **to which the Company is a party** or which is **binding upon the Compa**ny providing  for the issuance, disposition,  or acquisition  of any of its equity or any rights or interests exercisable therefor."  Social Tables failed to include Plaintiff's Warrant.

46.     In addition, pursuant to section 1(j) of the Agreement and Plan of Merger with Cvent, any holder with outstanding warrants was entitled to receive a warrant cancellation agreement by which it could cancel its  warrant and receive merger consideration from Social Tables, Cvent or the surviving corporation.  Social Tables notified only SVB Financial Group as holder of four (4) warrants, all issued between 2015 and 2018. Social Tables never notified MC SV I of its right to receive and submit a warrant cancellation agreement, thereby denying and cutting out MC SV I from the consideration to which it was entitled.

---

[3] "Equity holder" is defined in the recitals to include Warrant holders.  Section 1(j) also defines "Warrant" to mean each outstanding unexercised warrant to purchase shares of Social  Tables, whether or not then vested or fully exercisable, granted on or prior to the Effective Time, to any Person (each such Person, a "Warrant holder").  Accordingly, MC SV I was both a  "Warrant-holder" and an  "Equity holder."

47.     Further,  section 8(g)  of the Plan of Merger provided that Equity holders have a right to specific performance because Social Tables is unique and money damages may be inadequate. MC SV  I is an equity holder.[4]

48.     On October 26, 2018, Mr. Steven Kaplan responded to undersigned counsel's letter of October 18, 2018 letter (paragraph 43 above)  and **for the first time** raised the specious argument that the Warrant was not exercised properly  –  notwithstanding having complied with the procedures set forth in the Warrant, his acknowledgement on August 8, 2018 of receipt of the notice of exercise, and the several conversations between the parties and counsel regarding the documentation that Social Tables would produce to verify its  valuation (which it never did) to enable MC SV I to represent that it had received all necessary information from Social Tables and to make the requisite representations pursuant to Section 3 of the Warrant.

49.     Defendant Social tables has refused to issue the exercise shares underlying the Warrant, despite Plaintiff's demand to do so. [Exhibit C.]

50.     Section 5.10 of the SPA and Warrant Purchase Agreement provides that, in the event that any suit or action is instituted under or "in relation" to the SPA and Warrant Purchase Agreement, the prevailing party shall be entitled to recover from the other party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement, including without limitation, such reasonable fees and expenses of attorneys.

## COUNT I
## BREACH OF CONTRACT

51.     Plaintiff realleges paragraphs 1 – 50  as if fully set forth herein.

---

[4] *See* note 3 *supra*.

52.     Social Tables agreed in the Warrant to issue the exercise shares pursuant to the formula stated in paragraph 22 above, which required Social Tables under the Warrant to fulfill those conditions alleged in  paragraphs 23-25 above.

53.     As alleged in paragraph 34 above,  Plaintiff submitted a timely notice of exercise on July 9, 2018.

54.     As alleged in paragraph 43 and Exhibit C (attached hereto),  Plaintiff sent a demand for the exercise on October 18, 2018.

55.     Social Tables breached the Warrant  by refusing to provide the exercise shares.

56.     Plaintiff has been damaged directly in the amount of  $584,619, as well as consequential damages to be determined at trial.

57.     Plaintiff also is entitled to costs, expenses and attorneys fees under the SPA/Warrant Agreement.


## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

58.     Plaintiff realleges paragraphs  1 – 57  as if fully set forth herein.

59.     Social Tables had agreed to abide by the terms and conditions of the Agreement, including the Warrant.

60.     Implied in this  contractual relationship were Social Tables' covenants of good faith and fair dealing.

61.     As alleged in paragraphs 28, 31and 36 above, Social Tables claims it relied upon various 409A and other independent third-party valuation(s)  which purported to reflect the board of director's good faith exercise to set a fair market value for the shares but which were designed only as a subterfuge and to undervalue the Warrant shares to the detriment of Plaintiff.

62.     The 409A Valuation of June 30, 2018 for $1.02 per share was not credible because management and the board of directors of Social Tables never informed Timan that it was currently seeking a strategic partner with the assistance of Mooreland, and Social Tables represented to Plaintiff that the price per share was supported by a valid 409A Valuation or by an independent third-party valuation firm.

63.     In representing to Plaintiff the value of the Warrant shares, Social Tables also failed to take into account or inform Plaintiff about the Cvent merger talks that occurred as early as August 13, 2108, as alleged in paragraph 44 above, in which the price per share being considered, discussed or negotiated by Social Tables at $2.52 per share or higher would be well above both the $ 1.02 valuation Social Tables claimed under the June 30, 2018 409A Valuation and the $1.77 exercise price Plaintiff had suggested, which Social Tables claimed was too excessive.

64.     Social Tables in an arbitrary and capricious manner selected and proposed various 409A valuations that served to benefit it and deny Plaintiff an accurate valuation for purposes of his timely exercise.

65.     Social Tables also purposefully frustrated, interfered with and denied Plaintiff's request to timely review relevant corporate records so as to evaluate an appropriate exercise price and so as to make the representations Plaintiff would be required to make under section 3 of the Warrant, as set forth in paragraph 24 above.

66.     Social Tables further acted arbitrarily and in a capricious manner by failing to seek the vote of Plaintiff's four percent (4%) equity interest at the time of the merger (as alleged in paragraph 41 above) and by failing to send Plaintiff a warrant cancellation agreement, as alleged in paragraph 46 above, by which Plaintiff would obtain merger consideration for its Warrant.

67.     By refusing to honor the Warrant exercise and by failing to deliver the shares under the Warrant, Social Tables has deprived Plaintiff of the agreed-upon consideration its bargained for.

68.     Plaintiff has performed under the Agreement.

69.     Social Tables arbitrarily, capriciously and purposefully and in bad faith breached its covenant of good faith and fair dealing.

70.     By Social  Tables' actions in breaching  the implied covenant of good faith and fair dealing, it has caused (and continues to cause) Plaintiff to suffer harm and damages.

71.     By reason of the forgoing, Social Tables is liable to Plaintiff for direct damages Plaintiff suffered as a result of Defendant's breach as well as consequential damages to be determined at trial.

72.     Plaintiff also is entitled to costs, expenses and attorneys fees under the SPA/Warrant Agreement.

## COUNT III
## SPECIFIC PERFORMANCE

73.     Plaintiff realleges paragraphs  1 –72  as if fully set forth herein.

74.     Pursuant to the Agreement and related Warrant, Defendant Social Tables was obligated to delivery to Plaintiff 384,615 series seed convertible preferred stock.

75.     Despite its clear and unambiguous contractual obligation under the Warrant, Social Tables  has failed and /or refused to deliver the shares due and owing to Plaintiff.

76.     As a result of such failure and refusal by Social Tables, Plaintiff has suffered damages, has no adequate remedy at law, and in the absence of specific will suffer irreparable harm.

77.     The series seed convertible preferred shares of Social Tables are unique and not available on the public market.

78.     Plaintiff therefore requests that the Court enter an order of specific  performance directing and requiring Social Tables to  either (a) pay Plaintiff $421,641.36 , or (b)  issue and deliver to Plaintiff 167,318 shares at $1.77 exercise price  under the cashless exercise formula set forth in paragraph 22 above.

79.     Alternatively,  Plaintiff requests that the Court enter an order of specific performance directing and requiring Cvent to pay cash to Plaintiff in amount of $421,641.36 pursuant to the terms of the Agreement and Plan of Merger between Social Tables and Cvent, as alleged  in paragraph  47 above.

## PRAYER FOR RELIEF

Plaintiff prays for:

A.     An award of monetary damages against the defendant, including direct damages in the amount of $584,619 and consequential damages in an amount to be determined at trial;

B.     In the alternative, an order of specific performance directing and requiring Social Tables to deliver to Plaintiff  167,318 shares of convertible preferred stock and directing nominal defendant Continental Stock Transfer to enter on the stock register of Social Tables those shares and then issue and deliver to Plaintiff a certificate for those shares;

C.     Alternatively, an order directing and requiring Cvent to pay cash to MC SV I in amount of $421,641.36 pursuant to the terms of the Agreement and Plan of Merger with Cvent;

D      An award to Plaintiff for its costs, expense and attorney fees as authorized by Section 5.10 of the Agreement; and

E.     Such other and further relief as the Court may deem just, proper, and in the interest of justice.

Dated: February 1, 2019                              Respectfully Submitted,

*/s/ TV Sjoblom*
DC Bar #  273326
Thomas V. Sjoblom, Esq.
1300 I Street, N.W., Suite 400E
Washington, D.C. 20006
(202) 429-7125 or (703) 777-5971
tvsjoblom@tvs-law.com